United States District Court
Eastern District of Michigan
Southern Division

FILED
OCT 30 2025
CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

United States of America,

Plaintiff,

v.

D-1 Jaiswan Williams,

Defendant.

Case No. 25-20399

Hon. Judith E. Levy

# Plea Agreement

The United States of America and the defendant, Jaiswan Williams, have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

## 1. Counts of Conviction

The defendant will waive his right to an indictment and plead guilty to Counts 1 and 2 of the Information. Count 1 charges the defendant with Conspiracy to Aid and Abet Bank and Wire Fraud under 18 U.S.C. § 1349. Count 2 charges the defendant with Money Laundering under 18 U.S.C. § 1956.

## 2. Statutory Minimum and Maximum Penalties

The defendant understands that the counts to which he is pleading guilty carry the following minimum and maximum statutory penalties:

| | | |
|---|---|---|
| Count 1 | Term of imprisonment: | 30 years |
| | Fine: | $1,000,000, or twice the pecuniary gain or loss, 18 U.S.C. § 3571(d) |
| | Term of supervised release: | 3 years |
| Count 2 | Term of imprisonment: | 20 years |
| | Fine: | $500,000, or twice the value of the monetary instruments or funds involved, whichever is greater |
| | Term of supervised release: | 3 years |

The defendant further understands that the Court has the discretion to run the sentences of imprisonment on the counts of conviction consecutively to each other.

## 3. Elements of Counts of Conviction

The elements of Count 1, Conspiracy to Aid and Abet Bank and Wire Fraud, are:

1. Two or more persons, in some way or manner, agreed to try to commit the crime of aiding and abetting bank or wire fraud; and
2. The defendant knew the unlawful purpose of the plan and voluntarily joined in it.

A defendant aides and abets the crimes of bank or wire fraud if:

A. The crime of bank or wire fraud was committed;

B. The defendant helped or encouraged someone else to commit the crime; and

C. The defendant intended to help commit or encourage the crime.

The elements of Bank Fraud, the primary object of the conspiracy to aid and abet, are:

A. An individual knowingly executed a scheme to obtain money or property under the custody and control of a financial institution;

B. The scheme included a material misrepresentation or concealment of a material fact;

C. The individual had the intent to deceive the financial institution and to deprive it of something of value;

D. The financial institution was federally insured or otherwise fit

the definition of "financial institution" in 18 U.S.C. § 20.

The elements of Wire Fraud, the secondary object of the conspiracy to aid and abet, are:

A. An individual devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises;

B. The individual acted with the intent to defraud; and

C. That in advancing, furthering, or carrying out the scheme, the individual transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

The elements of Count 2, Money Laundering, are:

1. The defendant conducted a financial transaction;
2. The financial transaction involved property that represented the proceeds of a specified unlawful activity; in this case, wire fraud and bank fraud in violation of 18 U.S.C. § 1343 and 1344;
3. The defendant knew that the property involved in the financial

transaction represented the proceeds from some form of unlawful activity; and

4. The defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature or source of the proceeds of the wire fraud and bank fraud.

## 4. Factual Basis

The parties agree that the following facts are true, accurately describe the defendant's role in the offenses, and provide a sufficient factual basis for the defendant's guilty pleas:

### A. Count 1 – Conspiracy to Aid and Abet Wire and Bank Fraud

Beginning on or about October 23, 2022, and continuing until at least December 22, 2023, within the Eastern District of Michigan, Southern Division, and elsewhere, the defendants, **Jaiswan Williams**, **DaQuan Foreman**, **Vanessa Hargrove**, and **Crystal Jenkins**, and others known and unknown to the government, did knowingly, intentionally, and voluntarily combine, conspire, confederate, and agree with each other and other individuals, known and unknown to the government, to aid and abet bank and wire fraud. That is, the defendants agreed to steal from the United States mail checks drawn on financial

institutions and the United States Treasury and to sell those checks to others via Telegram knowing and intending that the purchasers would fraudulently present the stolen checks to financial institutions and others for the purposes of obtaining money under the custody and control of financial institutions and the United States Treasury.

Specifically, certain of the co-conspirators, including Vanessa Hargrove and Crystal Jenkins, agreed to use, and did use, their positions as postal employees to steal checks and other negotiable instruments that had been deposited into the mail. Some of the checks were drawn on financial institutions, and other checks were drawn on the United States Treasury. These co-conspirators would then provide the stolen checks to defendants Jaiswan Williams and DaQuan Foreman in exchange for payment or the promise of payments.

Defendants Jaiswan Williams and DaQuan Foreman marketed images of the stolen checks for sale on the "Whole Foods Slipsss" and "Uber Eats Slips" Telegram channels. More than 10,000 such checks were posted during the relevant time period, involving more than ten victims. The total face value of the checks posted to "Whole Foods Slipsss" and

"Uber Eats Slips" during the time period covered by the Information was over $66 million.

Subscribers to the "Whole Foods Slipsss" and "Uber Eats Slips" Telegram channels purchased stolen checks from the defendants using Cash App, Apple Pay, and Bitcoin. In posting the checks on Telegram and receiving payment via Cash App, Apple Pay, and Bitcoin transfers, the defendants used, and caused the use of, interstate wire communications during and in execution of the scheme. The defendants also transferred funds amongst one another using these same applications, again using and causing the use of interstate wire communications during and in execution of the scheme.

Defendant Williams knew that many of the stolen checks were drawn on financial institutions or would be presented to a financial institution for payment, and that the purchasers would falsely represent to the financial institution or another institution that accepted the stolen check that the purchaser was a legitimate payee.

For purposes of calculating the sentencing guidelines, the parties agree that the amount of the loss that was reasonably foreseeable to the defendant was between $25M and $65M.

### B. Count 2 – Money Laundering

Beginning on or about October 23, 2022, and continuing until at least December 22, 2023, in the Eastern District of Michigan, Southern Division, the defendant, Jaiswan Williams did knowingly conduct and attempt to conduct one or more financial transactions affecting interstate and foreign commerce, including wire transfers into his Credit Union One account, which involved the proceeds obtained as a result of the wire and bank fraud, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

Specifically, as part of the conspiracy to aid and abet bank and wire fraud scheme set forth above, Defendant Williams used multiple CashApp accounts registered in the names of other individuals to: (1) receive the proceeds of bank and wire fraud (obtained as a result of his aiding and abetting bank and wire fraud in the first instance), and (2)

ultimately transfer those proceeds into his own account at Credit Union One.

## 5. Stipulated Offenses

The parties stipulate under USSG § 1B1.2(c) that the defendant has committed the following additional offenses and that his sentencing guidelines should be calculated as if he had been convicted of additional counts charging those offenses:

Beginning in or around May 2020 and continuing through September 2021, in the Eastern District of Michigan and elsewhere, defendant Jaiswan Williams fraudulently obtained Pandemic Unemployment Assistance (PUA) benefits from approximately 3 different states in the total amount of $1,571,557. These benefits were obtained in the names of numerous other individuals, without those individuals' authorization. Further, Williams did so with knowledge that he was not entitled to receive those funds.

Additionally, both the submission of the fraudulent claims and the withdrawal of the unlawfully obtained PUA benefits caused the interstate transmission of information via wire; all in violation of 18 U.S.C. § 1343.

## 6. Advice of Rights

The defendant has read the Information, has discussed the charges and possible defenses with his attorney, and understands the crimes charged. The defendant understands that, by pleading guilty, he is waiving many important rights, including the following:

A. The right to plead not guilty and to persist in that plea;

B. The right to a speedy and public trial by jury;

C. The right to be represented by counsel—and, if necessary, have the court appoint counsel—at trial;

D. The right to be presumed innocent and to require the government to prove the defendant guilty beyond a reasonable doubt at trial;

E. The right to confront and cross-examine adverse witnesses at trial;

F. The right to testify or not to testify at trial, whichever the defendant chooses;

G. If the defendant chooses not to testify at trial, the right to have the jury informed that it may not treat that choice as evidence of guilt;

H. The right to present evidence or not to present evidence at trial, whichever the defendant chooses; and

I. The right to compel the attendance of witnesses at trial.

## 7. Collateral Consequences of Conviction

The defendant understands that his convictions here may carry additional consequences under federal or state law. The defendant understands that, if he is not a United States citizen, his convictions here may require him to be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant further understands that the additional consequences of his convictions here may include, but are not limited to, adverse effects on the defendant's immigration status, naturalized citizenship, right to vote, right to carry a firearm, right to serve on a jury, and ability to hold certain licenses or to be employed in certain fields. The defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty what the additional consequences of the defendant's convictions might be. The defendant nevertheless affirms that the defendant chooses to plead guilty regardless of any immigration or other consequences from his convictions.

8. **Defendant's Guideline Range**

**A. Court's Determination**

The Court will determine the defendant's guideline range at sentencing.

**B. Acceptance of Responsibility**

The government recommends under Federal Rule of Criminal Procedure 11(c)(1)(B) that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a) for his guideline calculation on Count 1. Further, if the defendant's offense level is 16 or greater and the defendant is awarded the two-level reduction under USSG § 3E1.1(a), the government recommends that the defendant receive an additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b). If, however, the government learns that the defendant has engaged in any conduct inconsistent with acceptance of responsibility—including, but not limited to, making any false statement to, or withholding information from, his probation officer; obstructing justice in any way; denying his guilt on the offense(s) to which he is pleading guilty; committing additional crimes after pleading guilty; or otherwise demonstrating a lack of acceptance of responsibility as defined

in USSG § 3E1.1—the government will be released from its obligations under this paragraph, will be free to argue that the defendant not receive *any* reduction for acceptance of responsibility under USSG § 3E1.1, and will be free to argue that the defendant receive an enhancement for obstruction of justice under USSG § 3C1.1.

### C. Other Guideline Recommendations

The parties also recommend under Federal Rule of Criminal Procedure 11(c)(1)(B) that the following guideline provisions apply to the defendant's guideline calculation on Counts 1 and 2.

- § 2S1.1(a)(1) – Base Offense for underlying offense: **33**

*See* §2B1.1(a)(1) – Base offense level: 7;
§2B1.1(b)(1)(L) – Foreseeable loss between $25M-$65M: +22;
§2B1.1(b)(2)(A) – 10 or more victims: +2;
§2B1.1(b)(4) – Business of receiving and selling stolen property: +2

- § 2S1.1(b)(2)(B) – Convicted under § 1956
(Increase offense level by 2)

- § 2S1.1(b)(3) – Sophisticated laundering involving two or more levels of transfers
(Increase offense level by 2)

- §3B1.1(a) – The defendant was an organizer, leader, manager, or supervisor of criminal activity involving five or more participants or being otherwise extensive (Increase offense by 4).

### D. Factual Stipulations for Sentencing Purposes

The conspiracy involved at least five individuals, including one or more currently uncharged co-conspirators.

### E. Parties' Obligations

Both the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the guideline recommendations or factual stipulations in paragraphs 8.B, 8.C, or 8.D. Neither party is otherwise restricted in what it may argue or present to the Court as to the defendant's guideline calculation.

### F. Not a Basis to Withdraw

The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if he disagrees, in any way, with the guideline range determined by the Court, even if that guideline range does not incorporate the parties' recommendations or factual stipulations in paragraphs 8.B, 8.C, or 8.D. The government likewise has no right to withdraw from this agreement if it disagrees with the guideline range determined by the Court.

**9. Imposition of Sentence**

**A. Court's Obligation**

The defendant understands that in determining his sentence, the Court must calculate the applicable guideline range at sentencing and must consider that range, any possible departures under the sentencing guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a), and apply any applicable mandatory minimums.

**B. Imprisonment**

**1. Recommendation**

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the government recommends that the defendant's sentence of imprisonment on Count 1 not exceed the midpoint of the defendant's guideline range as determined by the Court.

**2. No Right to Withdraw**

The government's recommendation in paragraph 9.B.1 is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the government's recommendation. The government likewise has no right to withdraw from this agreement if the

Court decides not to follow the government's recommendation. If, however, the Court rejects or purports to reject any other term or terms of this plea agreement, the government will be permitted to withdraw from the agreement.

### C. Supervised Release

#### 1. Recommendation

The parties recommend a three-year term of supervised release.

#### 2. No Right to Withdraw

The parties' recommendation is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the parties' recommendation. The defendant also understands that the government's recommendation concerning the length of the defendant's sentence of imprisonment, as described above in paragraph 9.B.1, will not apply to or limit any term of imprisonment that results from any later revocation of the defendant's supervised release.

### D. Fines

The parties have no agreement as to a fine.

### E. Restitution

The Court must order restitution to every identifiable victim of the defendant's offense and all relevant conduct. The Court shall determine the victims of the conspiracy and the amounts of restitution due at sentencing; in addition, the defendant shall pay restitution in the amount of $~~2,668,609~~ 1,571,557 SR RAP JW to various state workforce agencies (with specific amounts per agency to be determined at or before sentencing)

The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. 18 U.S.C. §§ 3612(c) and 3613. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

The defendant agrees to make a full presentence disclosure of his financial status to the United States Attorney's Office by completing a Financial Disclosure Form and the accompanying releases for the purpose of determining his ability to pay restitution. The defendant agrees to complete and return the Financial Disclosure Form within

three weeks of receiving it from government counsel. The defendant agrees to participate in a presentencing debtor's examination if requested to do so by government counsel.

## F. Forfeiture

Defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) as incorporated by 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(a)(2)(A), without contest, any and all right, title, and interest, he may possess in any property, real or personal, which constitutes or is derived, directly or indirectly, from proceeds traceable to the scheme underlying his violation of Count 1 of the Information, including the following:

- Nine (9) Miscellaneous jewelry (24-USP-000496): (1) One rose gold bracelet; (1) One clear stone necklace; (1) One gold and white Cartier sunglasses; (1) One clear round stone earrings; (1) one rose gold necklace and appraisal paperwork; (1) One Audemars Piguet watch with clear stones; (1) One rose gold Rolex watch; (1) One gold necklace with clear stones in the shape of 'C' and (1) One clear stone bracelet.

- Twenty-two (22) Miscellaneous shoes (24-USP-000497): (1) One tan Christian Louboutin shoes; (1) One black, white and red Balenciaga slip on shoes; (1) One black Louis Vuitton sneakers; (1) One grey Dior B30 sneaker; (1) One black Dior 900 sneakers; (1) One light brown Dior B22 sneakers; (1) One black and green Dior B30 sneakers; (1)

One white Prada Calzature Uomo boots; (1) One black Moncler Apres Trail High boots; (1) One black Prada shoes; (1) One green/white/grey Dior B30 sneakers; (1) One silver/white/blue Dior B22 sneakers; (1) One black Balenciaga '45' shoes; (1) One black/grey Balenciaga '45' shoes; (1) One pink/black/white Dior B22 sneakers; (1) One black/grey Dior B30 sneakers; (1) One brown/tan/grey Dior B30 sneakers; (1) One black/blue Yeezy Boost 350 shoes; (1) One pink Balenciaga '45' sneakers; (1) One black Balenciaga '45' shoes covered in white writing; (1) One black Prada boots and (1) One black Christian Louboutin shoes covered in spikes.

(referred to herein as the "Subject Property").

The forfeiture agreement includes the imposition a Forfeiture Money Judgment against the defendant in favor of the United States, in the amount of $721,913.42. The Forfeiture Money Judgment represents the value of property personally obtained by defendant as a result of his violation of Count 1 of the Information. Defendant agrees that the Forfeiture Money Judgment may be satisfied, to whatever extent possible, from any property owned or under the control of the defendant. To satisfy the money judgment, defendant explicitly agrees to the forfeiture of any assets he has now, or may later acquire, as substitute assets under 21 U.S.C. § 853(p)(2) and waives and relinquishes his right

to oppose the forfeiture of substitute assets under 21 U.S.C. § 853(p)(1) or otherwise.

Defendant agrees to the entry of one or more orders of forfeiture incorporating the forfeiture of any property, including the Court's prompt entry of a Preliminary Order of Forfeiture as to the Forfeiture Money Judgment, following defendant's guilty plea, upon application by the United States at or any time before his sentencing in this case, as mandated by Fed. R. Crim. P. 32.2. Defendant agrees to sign such an order, indicating he consents to its entry if requested to do so by the Government.

Defendant waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise him of this, pursuant to Rule 11(b)(l)(J), at the time his guilty plea is accepted.

Defendant further agrees to waive all constitutional and statutory challenges in any manner to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including, but not limited to, any Double Jeopardy challenge and any challenge that the forfeiture constitutes an excessive fine or punishment under the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

For any property subject to forfeiture that constitutes or is derived, directly or indirectly, from proceeds traceable to the scheme underlying defendant's violation of Count 1 of the Information, Defendant agrees that he will cooperate with the United States by taking whatever steps are necessary to deliver clear title to the properties to be forfeited to the United States and will execute such legal documents as may be required to transfer title to the United States and by taking whatever steps are necessary to ensure that the property is not transferred, disbursed, hidden, wasted or otherwise made unavailable for forfeiture. Defendant further agrees that he will not assist any third party in asserting a claim to the property to be forfeited in any forfeiture proceeding (judicial or non-judicial) and that he will testify truthfully in any judicial forfeiture proceeding if requested to do so by the government.

### G. Special Assessment

The defendant understands that he will be required to pay a special assessment of $200.00, due immediately upon sentencing.

## 10. Appeal Waiver

The defendant waives any right he may have to appeal his conviction on any grounds. The defendant also waives any right he may have to appeal his sentence on any grounds, unless his sentence of imprisonment exceeds the top of the guideline range as determined by the Court.

## 11. Collateral Review Waiver

The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right he may have to challenge his conviction or sentence by collateral review, including, but not limited to, any right he may have to challenge his conviction or sentence on any grounds under 28 U.S.C.

§ 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

## 12. Remedies for Withdrawal, Breach, Rejection, or Vacatur

If the defendant is allowed to withdraw his guilty plea or breaches this agreement, or if the Court rejects this agreement, or if the defendant's conviction or sentence under this agreement is vacated, the government may reinstate any charges against the defendant that were dismissed as part of this agreement and may file additional charges against the defendant relating, directly or indirectly, to any of the conduct underlying the defendant's guilty plea or any relevant conduct. If the defendant has been permitted to plead guilty to a lesser-included offense, the government may also reinstate any charges or file any additional charges against the defendant for the greater offense, and the defendant waives his double-jeopardy rights with respect to the greater offense. If the government reinstates any charges or files any additional charges as permitted by this paragraph, the defendant waives his right to challenge those charges on the ground that they were not filed in a

timely manner, including any claim that they were filed after the limitations period expired.

**13. Use of Withdrawn Guilty Plea**

The defendant agrees that if he is permitted to withdraw his guilty plea for any reason, he waives all of his rights under Federal Rule of Evidence 410, and the government may use his guilty plea, any statement that the defendant made at his guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

**14. Parties to Plea Agreement**

This agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

**15. Scope of Plea Agreement**

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant at any time before the

defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement, though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea agreement also does not prevent any civil or administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

## 16. Acceptance of Agreement by Defendant

This plea offer expires unless it has been received, fully signed, in the United States Attorney's Office by 5:00PM on October 30, 2025. The government may withdraw from this agreement at any time before the defendant pleads guilty.

JEROME F. GORGON, JR.
United States Attorney

John K. Neal
Chief, Anit-Corruption Unit
Assistant U.S. Attorney

Ryan A. Particka
Assistant U.S. Attorney

Dated: October 27, 2025

By signing below, the defendant and his attorney agree that the defendant has read or been read this entire document, has discussed it with his attorney, and has had a full and complete opportunity to confer with his attorney. The defendant further agrees that he understands this entire document, agrees to its terms, has had all of his questions answered by his attorney, and is satisfied with his attorney's advice and representation.

Steven Fishman
Attorney for Defendant

Jaiswan Williams
Defendant

Dated: 10/29/25